W. EUGENE DAVIS, Circuit Judge.
In this appeal, Plano Independent School District (“PISD”) argues that the Texas Religious Freedom Restoration Act’s (“TRFRA”) pre-suit notice requirement is a jurisdictional prerequisite to suit and that because Plaintiffs did not strictly comply by sending a letter certified mail, return receipt requested, PISD’s governmental immunity has not been waived. Finding that compliance with the pre-suit notice requirement is jurisdictional under Texas law and that the district court erred in denying PISD’s Motion for Partial Summary Judgment against the Plaintiffs, we REVERSE.
I.
The facts in this case are well known to this court,[1] and while this appeal presents a very narrow legal question that does not turn on those underlying facts, a brief recitation is necessary to understand the context of the parties’ arguments.
Plaintiffs in this case are the parents of four former elementary school students (“the Morgans”)[2] in the PISD who sued the school district over an alleged violation of First Amendment rights. Plaintiffs complained that the Morgans’ third-grade son Jonathan was prevented from distributing a “candy cane ink pen” with a laminated card containing a religious message *581 about the legend of the candy cane and its Christian origins at a winter break party on December 19, 2008.
Doug Morgan (father of Jonathan Morgan) prior to the December 2003 winter party, wrote an e-mail to Carole Greisdorf, assistant superintendent of the PISD, to investigate PISD’s policies and expressing concern about the policies and regulations affecting the “[r]eligious expression of our children.” Greisdorf responded that concerns about how religious expression is handled should first be addressed with the school principal. Doug, and his wife, Robin Morgan, then met personally with Jonathan’s elementary school principal, Lynn Swanson, on December 4, 2003. During that meeting Principal Swanson informed the Morgans that it was the practice, policy, and custom of the PISD that religious materials could not be distributed while on school property because of the religious viewpoint of the materials and that only secular materials and gifts could be distributed or displayed at the party. On December 17, 2003, Morgan again e-mailéd Greisdorf and expressed his “strong desire” that his son be allowed to engage in religious expression by distributing the candy canes at the party. That same day Greisdorf responded to this e-mail by confirming that Principal Swanson was “exactly right in her interpretation of the Plano ISD policies.”
Later, on December 17, 2003, the Morgans, through their attorney, sent a demand letter entitled “Unconstitutional Violation of Right to Seasonal Religious Expression” to Principal Swanson, Superintendent Douglas Otto, Deputy Superintendent Danny Modisette, and all the members of the PISD Board of Trustees. The letter complained that the PISD and its policies, customs, and procedures were interfering with Jonathan Morgan’s right to religious expression and contended that Morgan had a right to express his religious faith through the distribution of personal gifts to fellow students. The letter also included a “demand,” requesting notification that Jonathan and students would be free to distribute their gifts to fellow students. It concluded that “[u]nless we hear from you within this time frame, we will seek redress in federal court.” As the party was two days away at that point, the letter was delivered to Principal Swanson via fax and U.S. mail, and the letter was emailed to all others. It is undisputed that the letter was not sent by certified mail, return receipt requested. On December 18, 2003, PISD’s attorney responded to the letter and informed the Morgans and their attorney that Jonathan could not distribute candy canes in the classroom or hallways in conjunction with the holiday party.
The families filed the present lawsuit against the PISD on December 15, 2004, prior to the next scheduled winter break party, which was to occur on Friday, December 17, 2004. The original and amended complaints contain six counts: violation of freedom of speech under the federal and state constitutions, violation of equal protection rights, free exercise of religion and establishment clause, intentional infliction of emotional distress, and violation of religious freedom protected by the TRFRA. Plaintiffs sought a temporary restraining order (“TRO”), preliminary and permanent injunctions, a declaratory judgment, nominal damages, punitive damages, and attorneys’ fees and costs against PISD. On December 16, 2004, the district court granted the request for a TRO and enjoined the school district and school officials from interfering with or prohibiting Plaintiffs and other students from distributing religious viewpoint gifts at the 2004 winter break party or from committing any acts calculated to cause students to feel uncomfortable because of a student’s exercise of religion.
*582 After six years of litigation, on May 24, 2011, PISD filed a Motion for Partial Summary Judgment on (1) Plaintiffs’ Texas Constitution claims and (2) Plaintiffs’ TRFRA claims. On March 30, 2012, the district court granted partial summary judgment on the Texas Constitution claims and found that the Versher, Shell, and Wade Plaintiffs could not sue under the TRFRA because they failed to give proper notice prior to filing suit; but the court denied partial summary judgment as to the Morgans, finding that the Morgan Plaintiffs’ notice was sufficient and that their TRFRA suit was not barred. This left only the Morgans’ TRFRA as-applied claims as to the 2004 policy pending.[3] The present appeal is limited to the Morgans’ TRFRA claims, more particularly, PISD’s contention that the written notice sent, received, and responded to by PISD is not sufficient notice so as to waive governmental immunity because the manner of delivery was not by certified mail, return receipt requested.
II.
The parties first dispute whether the district court’s order denying governmental immunity from suit is an immediately appealable order. In Shanks v. AlliedSignal, Inc., this court stated .that “[although appellate jurisdiction under § 1291 is a matter of federal law, we look to state law to determine whether the basis of [a defendant’s] claim is properly characterized as an immunity from suit or merely a defense to liability.” 169 F.3d 988, 992 (5th Cir.1999). Because it is well-established under Texas law that PISD’s governmental immunity is not a mere defense to suit but rather is complete immunity from suit, this court has jurisdiction.[4] And because governmental immunity from suit defeats a trial court’s jurisdiction, whether a trial court has jurisdiction is a question of law subject to de novo review. See Briseno v. Ashcroft, 291 F.3d 377, 379 (5th Cir.2002); Tex. Dep’t of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex.1999).
III.
The TRFRA (codified at TEX. CIV. PRAC. & REM. CODE §§ 110.001-110.012) provides that “a government agency may not substantially burden a person’s free exercise of religion” unless the burden is in “furtherance of a compelling governmental interest” and is “the least restrictive means of furthering that interest.” § 110.003. Under section 110.008: “Subject to Section 110.006, sovereign immunity to suit and from liability *583 is waived and abolished to the extent of liability created by Section 110.005, and a claimant may sue a government agency for damages allowed by that section.”[5] (emphasis added).
Section 110.006, in turn, provides:
(a) A person may not bring an action to assert a claim under this chapter unless, 60 days before bringing the action, the person gives written notice to the government agency by certified mail, return receipt requested:
(1) that the person’s free exercise of religion is substantially burdened by an exercise of the government agency’s governmental authority;
(2) of the particular act or refusal to act that is burdened; and
(3) of the manner in which the exercise of governmental authority burdens the act or refusal to act.
(b) Notwithstanding Subsection (a), a claimant may, within the 60-day period established by Subsection (a), bring an action for declaratory or injunctive relief and associated attorney’s fees, court costs, and other reasonable expenses if:
(1) the exercise of governmental authority that threatens to substantially burden the person’s free exercise of religion is imminent[6]....
(c)A government agency that receives a notice under Subsection (a) may remedy the substantial burden on the person’s free exercise of religion.
(emphasis added).
PISD’s argument is straightforward: Section 110.006 requires providing “written notice to the government agency by certified mail, return receipt requested,” 60 days before bringing an action under the TRFRA. PISD is a public school district and, absent a waiver effected by clear and unambiguous language, PISD enjoys governmental immunity from suit and liability.[7] See Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692, 694 & n. *584 3, 697 (Tex.2003); Bonillas v. Harlandale Indep. Sch. Dist., 832 F.Supp.2d 729, 735 (W.D.Tex.2011). PISD cites numerous cases standing for the proposition that statutory waivers of immunity (and statutory language in general) must be strictly construed by the courts and applied “as written.” City of Hous. v. Jackson, 192 S.W.3d 764, 770 (Tex.2006).[8] Thus, PISD argues that because the Morgans did not strictly comply with the statute, i.e., by sending pre-suit notice certified mail, return receipt requested, PISD has not waived its immunity.
Although the statute requires pre-suit notice via certified mail, return receipt requested, “just because a statutory requirement is mandatory does not mean that compliance with it is jurisdictional.” Albertson’s, Inc. v. Sinclair, 984 S.W.2d 958, 961 (Tex.1999). In construing the TRFRA, the question for this court is whether the pre-suit notice requirement is jurisdictional — that is, a condition of the TRFRA’s waiver of immunity from suit— or not. Of course, if the pre-suit notice requirement is jurisdictional, the “ ‘failure of a jurisdictional requirement deprives the court of the power to act (other than to determine that it has no jurisdiction), and ever to have acted, as a matter of law.’ ” City of DeSoto v. White, 288 S.W.3d 389, 393 (Tex.2009) (quoting Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser, 140 S.W.3d 351, 359 (Tex.2004), superseded by statute, Tex. Gov’t Code § 311.034).
To argue that the pre-suit notice provision is jurisdictional, PISD points to section 311.034 of the Texas Government Code (“Texas Code Construction Act”), which reads: “Statutory prerequisites to á suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity.” Tex. Gov’t Code § 311.034. While section 311.034’s language is explicit that pre-suit notice requirements in a suit against a governmental entity are jurisdictional,[9] this lan *585 guage was not added to the statute until 2005, after the Morgans filed suit.[10] Thus the Morgans argue that section 311.034’s language should not apply.
Although it may have been unclear before 2010 whether section 311.034’s language could apply to a pending suit, the Texas Supreme Court’s decision in University of Texas Southwestern Medical Center at Dallas v. Estate of Arancibia, 324 S.W.3d 544 (Tex.2010), removes all doubt. In Arancibia, Southwestern Medical Center filed a plea to the jurisdiction because it contended it had no pre-suit notice of Arancibia’s claim under the Texas Tort Claims Act. Id. at 547. Arancibia’s suit, like the case at hand, was filed before the 2005 amendment to section 311.034. Id. The court stated that a “prohibition against retroactive application of laws does not apply to procedural, remedial, or jurisdictional statutes” and that a statute “does not operate retroactively merely because it is applied in a case arising from conduct predating the enactment.” Id. at 547-48. Specifically construing section 311.034, the court held that “[statutes — like section 311.034 — that do not deprive the parties of a substantive right and ‘speak to the power of the court rather than to the rights or obligations of the parties’ may be applied to cases pending at the time of enactment.” Id. at 548 (quoting Landgraf v. USI Film Prods., 511 U.S. 244, 274, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)). Thus the court concluded that section 311.034’s amended language applies to pending eases and that a “purported failure to provide notice would deprive the trial court of jurisdiction, an issue that may be raised on interlocutory appeal.” Id.
Even so, the Morgans argue that there is no explicit language in the TRFRA that provides that the pre-suit notice is strictly required or that the provision is meant to be jurisdictional. The Morgans contend that the only purpose of the notice provision in the TRFRA is to provide the governmental agency an opportunity to “remedy the substantial burden on the person’s free exercise of religion,” such that a “person with respect to whom a substantial burden on the person’s free exercise of religion has been cured by a remedy implemented under this section may not bring an action under Section 110.005.” Tex. Civ. Prac. & Rem.Code § 110.006(c),(e). Thus the Morgans argue that based on the facts in the instant case — where PISD’s attorney actually responded to the Morgans’ faxed demand letter — substantial compliance will suffice when a government agency has actual notice that an individual’s religious freedom is burdened.
Yet PISD points out that Texas lawmakers easily could have included in the TRFRA’s waiver of immunity provisions that actual notice suffices, as they did in the Texas Tort Claims Act,[11] and that the legislature presumably opted against actual notice on purpose; thus Texas lawmakers required strict compliance, not substantial compliance.
The Morgans also rely, as did the magistrate judge and in turn the district court, on Roccaforte v. Jefferson County, 341 *586 S.W.3d 919 (Tex.2011), for the proposition that substantial compliance with a notice provision suffices. In Roccaforte, the plaintiff failed to strictly comply with Texas Local Government Code 89.0041, which provides that when filing suit against a county, “written notice must be delivered by certified or registered mail by the 30th business day after suit is filed.”[12] Id. at 925 (emphasis added) (quoting Tex. Loc. Gov’t Code § 89.0041(b)). The Roccaforte plaintiff provided notice “by personal service of process, rather than registered or certified mail as the statute contemplates.” Id. at 920. The Texas Supreme Court held that compliance with the notice requirements under section 89.0041 was not jurisdictional because, importantly, “Section 311.034 applies to prerequisites to suit, not notice requirements that can be satisfied only after suit is filed.” Id. at 925 (emphasis in original);[13] Because Roccaforte plainly dealt with a form of post-suit notice and section 311.034’s language clearly deals with pre-suit notice, we are convinced that the magistrate judge’s reliance on Roccaforte is misplaced.
The Texas Supreme Court’s decision in Prairie View A & M University v. Chatha, 381 S.W.3d 500 (Tex.2012), supports our view that Roccaforte does not control this case. In interpreting section 311.034’s language that “[sjtatutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity,” the Texas high court found that the term “statutory prerequisite” necessarily has three components. First, “in order to fall within the ambit of section 311.034, a prerequisite must be found in the relevant statutory language.” Id. at 512. Second, “the prerequisite must be a requirement.” Id. And finally,
the term “pre” indicates the requirement must be met before the lawsuit is filed. See Roccaforte v. Jefferson Cnty., 341 S.W.3d 919, 925 (Tex.2011) (holding that post-suit notice requirement was not jurisdictional, even in light of section 311.034, because post-suit notice is not a “prerequisite” to suit). Thus, according to the plain language of section 311.034, the term “statutory prerequisite” refers to statutory provisions that are mandatory and must be accomplished prior to filing suit.
Id. Because the Texas Supreme Court concluded that section 311.034 does not apply to post-suit notice requirements and explicitly distinguished Roccaforte as a case that involved post-suit notice, neither Roccaforte ’s conclusion nor analysis controls this case. Thus, the three statutory prerequisites are met: the TRFRA imposes statutory prerequisites to filing suit, the TRFRA contains language that is mandatory, and the pre-suit requirement must be accomplished prior to filing suit.[14] Thus, section 311.034 is triggered and the presuit notice requirements are jurisdictional.
*587 The Morgans next argue that by its language section 811.034 applies only to sovereign immunity but does not apply to the governmental immunity that is at issue here.[15] In Travis Central Appraisal District v. Norman, 342 S.W.3d 54 (Tex.2011), the Texas Supreme Court stated: “Sovereign and governmental immunity are ... related ... concepts that differ only in scope. Their similarity sometimes causes the two terms to be used interchangeably.” Id. at 58. In Travis, the court construed Texas Labor Code section 504.053’s provision which read “[n]othing in this chapter waives sovereign immunity or creates a new cause of action.” Id. at 57. Even though the provision “spoke to sovereign immunity rather than governmental immunity,” the court concluded that Chapter 504 of the Labor Code applies to political subdivisions and held that the “[sovereign] immunity referenced in the ... no-waiver provision refers to the immunity applicable to such subdivisions [i.e., governmental immunity].” Id. at 57-58.[16]
The Morgans also cite Barr v. City of Sinton, 295 S.W.3d 287 (Tex.2009), where the Texas Supreme Court interpreted the TRFRA in the context of a zoning ordinance that precluded the use of religious halfway homes. In Barr the court, in a footnote, stated that while the plaintiffs attorney sent a letter to the City, the “trial court found that ‘[plaintiffs failed to give notice as required by the Religious Freedom Act’, [but] the City does not argue that here.” Id. at 292 n. 8. Admittedly, this would undercut the conclusion that compliance with the pre-suit notice provision is jurisdictional, for if it were the court would have dismissed that case for lack of jurisdiction. Even so, Barr can be reconciled with our conclusion that the pre-suit notice is jurisdictional: the opinion provides no further discussion or analysis as to why the plaintiffs notice was *588 insufficient. Additionally, Barr was decided prior to Arancibia so the court could not yet rely on Arancibia’s guidance that the amended language of section 811.034 is meant to apply to cases pending at the time of its enactment.[17]
In summary, section 110.006 of the TRFRA requires pre-suit notice in the form of certified mail, return receipt requested, 60 days prior to filing suit; section 311.034 provides that statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity; and Arancibia holds that section 311.034 applies to cases pending at the time of its enactment.[18] While Plaintiffs request that we certify to the Texas Supreme Court whether this pre-suit notice requirement is jurisdictional, we find the statute clear and are satisfied that the Texas Supreme Court would apply the statute as written. Because it is undisputed that the Morgans’ demand letter did not comply with the jurisdictional pre-suit notice requirements, PISD’s governmental immunity is not waived.[19]
IV.
For the reasons stated above, we REVERSE the judgment of the district court and dismiss Plaintiffs’ TRFRA claim for lack of jurisdiction.

. Indeed, this is the third appeal of this matter to the Fifth Circuit. Previously, this court published an opinion concerning the facial constitutionality of the amended PISD speech policies, Morgan v. Plano Indep. Sch. Dist., 589 F.3d 740 (5th Cir.2009), and an opinion concerning qualified immunity for certain government officials regarding religious speech of elementary school students on public school campuses, Morgan v. Swanson, 659 F.3d 359 (5th Cir.2011) (en banc).

. While plaintiffs are the Morgan, Shell, Versher, and Wade plaintiffs, the Morgans are the plaintiffs applicable to the matter at hand.

. At issue was the PISD’s 2004 policy as well as its 2005 policy (PISD’s amended student distribution policy that was less restrictive than its predecessor). The district court dismissed Plaintiffs’ TRFRA claims regarding the 2005 policy, both facially and as-applied, and also dismissed the Plaintiffs’ TRFRA claim regarding the facial constitutionality of the 2004 policy.
This summary judgment ruling does not concern the merits of the various as-applied federal constitutional challenges to the PISD’s prior student distribution policy, which remain pending.

. See, e.g., Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund, 212 S.W.3d 320, 324 (Tex.2006) ("[The] doctrine of governmental immunity ... protects political subdivisions of the State, including counties, cities, and school districts. A political subdivision enjoys governmental immunity from suit to the extent that immunity has not been abrogated by the Legislature.” (citation omitted)); Tooke v. City of Mexia, 197 S.W.3d 325, 332 (Tex.2006) ("In Texas, governmental immunity has two components: immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether.” (footnote omitted)); see also Tex. Civ. Prac. & Rem.Code § 51.014(a)(8) (“A person may appeal from an interlocutory order :.. that ... grants or denies a plea to the jurisdiction by a governmental unit.... ”).

. Section 110.005 delineates the remedies an individual may recover including declaratory relief, injunctive relief, reasonable attorney's fees, and compensatory damages not to exceed $10,000.

. The Morgans first contend that they did not need to comply with the notice requirements because the TRFRA explicitly waives the notice requirements when the lawsuit is for declaratory or injunctive relief and the threat of the burden to the plaintiff’s religious freedom is imminent. See § 110.006(b). The Morgans point to the fact that they actually obtained a TRO on December 16, 2004, which enjoined the school district and school officials from prohibiting student distribution of religious viewpoint gifts. This argument is unavailing, for the statute does not purport to waive the pre-suit notice requirement if a threat to religious expression is imminent, it just allows one to bring suit without having to wait 60 days. And there is also no "imminence” here as the Morgans argue: the issue on which this suit is based is the 2003 party in which Jonathan was prohibited from distributing his religious message, but the Morgans did not file for a TRO prior to the 2003 party (the subject of their 2003 demand letter) and instead waited to file their TRO application until immediately before the next year's 2004 party.

."Sovereign immunity and ... governmental immunity ... exist to protect the State and its political subdivisions from lawsuits and liability for money damages. Such lawsuits ‘hamper governmental functions by requiring tax resources to be used for defending lawsuits and paying judgments rather than using those resources for their intended purposes.’ ” Mission Consol. Indep. Sch. Dist. v. Garcia, 253 S.W.3d 653, 655 (Tex.2008) (citation omitted) (quoting Reata Constr. Corp. v. City of Dallas, 197 S.W.3d 371, 375 (Tex.2006)). Furthermore,
Courts often use the terms sovereign immunity and governmental immunity interchangeably. However, they involve two distinct concepts. Sovereign immunity refers to the State's immunity from suit and liability. In addition to protecting the State *584 from liability, it also protects the various divisions of state government, including agencies, boards, hospitals, and universities. Governmental immunity, on the other hand, protects political subdivisions of the State, including counties, cities, and school districts.
Wichita Falls, 106 S.W.3d at 694 n. 3 (citations omitted).

. See Tex. Dep’t of Transp. v. York, 284 S.W.3d 844, 846 (Tex.2009) ("Legislative consent to waive sovereign immunity by statute must be by ‘clear and unambiguous language,' Tex. Gov't Code § 311.034, and suit can then be brought 'only in the manner indicated by that consent.’ ” (quoting Wichita Falls, 106 S.W.3d at 694)); Mission Consol. Ind. Sch. Dist., 253 S.W.3d at 655 ("Because the Legislature is better suited to balance the conflicting policy issues associated with waiving immunity, we look to pertinent legislative enactments to determine the extent to which immunity has been voluntarily relinquished."); Wichita Falls, 106 S.W.3d at 697 ("[Wjhen construing a statute that purportedly waives sovereign immunity, we generally resolve ambiguities by retaining immunity.”); see also Tex. Lottery Comm’n v. First State Bank of DeQueen, 325 S.W.3d 628, 635 (Tex. 2010) ("We presume the Legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind.”); City of San Antonio v. Hartman, 201 S.W.3d 667, 673 (Tex.2006) ("We must construe this statute according to what it says, not according to what we think it should have said.”); St. Luke’s Episcopal Hosp. v. Agbor, 952 S.W.2d 503, 505 (Tex.1997) (“‘Courts must take statutes as they find them.... They are not responsible for omissions in legislation.' " (quoting RepublicBank Dallas, N.A. v. Interkal, Inc., 691 S.W.2d 605, 607 (Tex.1985))); Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 540 (Tex.1981) ("Likewise, we believe every word excluded from a statute must also be presumed to have been excluded for a purpose.”).

. See also Colquitt v. Brazoria Cnty., 324 S.W.3d 539, 543 (Tex.2010) ("[W]e agree that section 311.034 of the Code Construction Act makes compliance with the notice provisions jurisdictional....”).

. In University of Texas Southwestern Medical Center at Dallas v. Loutzenhiser, 140 S.W.3d 351, 364 (Tex.2004), the Texas Supreme Court concluded that the notice provision in the Torts Claim Act, while mandatory, was not a condition of the Act’s waiver of immunity. After the court's decision in Loutzenhiser, the Legislature amended section 311.034 of the Code Construction Act to explicitly make notice jurisdictional. See Act of May 25, 2005, 79th Leg., R.S. ch. 1150, 2005 Tex. Gen. Laws 3783. The amendment took effect September 1, 2005.

. See TEX. CIV. PRAC. & REM. CODE § 101.101(c) (stating that the notice requirements of that Act “do not apply if the governmental unit has actual notice” of injury).

. The written notice was to contain the style and cause number of the suit, the court in which the suit was filed, the date on which the suit was filed, and the name of the person filing suit. Tex. Loc Gov’t Code § 89.0041(b)(l)-(4).

. See also University of Texas Health Science Center at San Antonio v. Webber-Eells, 327 S.W.3d 233, 239 (Tex.App.2010), wherein the pláintiff tried to argue that substantially complying with a notice requirement was sufficient — and cited post-suit notice cases standing for this proposition — the court stated that in those instances it was "[o]nly after determining that the statute was not jurisdictional did the courts determine that substantial compliance with the statute was sufficient.”

.“A person may not bring an action to assert a claim under this chapter unless, 60 days before bringing the action, the person gives written notice to the government agency by certified mail, return receipt requested!)]” TEX. CIV. PRAC. & REM. CODE § 110.006 (emphasis added).

. Texas Government Code § 311.034 provides, in full:
311.034. Waiver of Sovereign Immunity In order to preserve the legislature’s interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language. In a statute, the use of "person,” as defined by Section 311.005 to include governmental entities, does not indicate legislative intent to waive sovereign immunity unless the context of the statute indicates no other reasonable construction. Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity,
(emphasis added).

. See also City of Dallas v. Carbajal, 324 S.W.3d 537, 537-38 (Tex.2010) (stating that under section 311.034 the “provision of notice is a jurisdictional requirement in all suits against a governmental unit” and applying section 311.034 to a city, which enjoys governmental rather than sovereign immunity); Tex. Gov’t Code § 2007.004 .(using the terms "governmental immunity” and "sovereign immunity” interchangeably); City of Hous. v. Williams, 353 S.W.3d 128, 134-35 (Tex.2011) (statute which used the term "sovereign immunity” waives a governmental entity’s, including a school district's, immunity from suit).
The Morgans also rely on language from City of DeSoto v. White, 288 S.W.3d 389 (Tex.2009), in which the court stated: "Section 311.034 specifically addresses waivers of sovereign immunity, an issue not implicated here.” Id. at 396 (emphasis added). Yet we do not believe the court's statement was meant to limit section 311.034 to sovereign immunity specifically, as the Morgans argue. At issue in DeSoto was a notice provision by which the City was required to give notice to a suspended police officer that if the officer appealed to a hearing examiner, his ability to seek further review in district court would be limited; but the City failed to do so. Id. at 391. While the police officer argued that section 311.034 applied to the City’s failure to provide him with notice of this limitation, the court concluded that section 311.034 simply had no application on those facts. See id. at 395-96.

. The Morgans also cite A.A. ex rel. Betenbaugh v. Needville Independent School District, 611 F.3d 248 (5th Cir.2010) because it appears that the plaintiffs in Needville made their TRFRA claims known through e-mails and face-to-face meetings, as the Morgans did here. See id. at 254-55. Yet in Needville there is simply no discussion in the opinion as to whether or not the plaintiffs complied with the TRFRA’s notice provision. See id. at 257. Thus this is not particularly helpful to the Morgans because without any discussion on this point there is simply no reason to assume the Needvilles did not comply with the notice provisions of the statute.

. See TEX. CIV. PRAC. & REM. CODE § 110.006; Tex. Gov't Code § 311.034; Arancibia, 324 S.W.3d 544 (Tex.2010).

.Because we conclude that the noncompliance with the TRFRA's pre-suit notice requirements is a jurisdictional bar to suit, we need not address PISD's argument that the contents of the Morgans’ letter did not conform to the requirements of the TRFRA or the Morgans’ contention that PISD waived any argument that the TRFRA pre-suit notice was insufficient by waiting over six years to raise it.