# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-50193

United States Court of Appeals
Fifth Circuit

**FILED**

December 5, 2016

Lyle W. Cayce
Clerk

DON POWERS; KARON WERNLI,

Plaintiffs - Appellees

v.

NORTHSIDE INDEPENDENT SCHOOL DISTRICT,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:14-CV-1004

Before  JONES, BARKSDALE and COSTA, Circuit Judges.

PER CURIAM:*

Plaintiffs-appellees Don Powers and Karon Wernli are a former principal and assistant principal, respectively, at Adams Hill Elementary School in San Antonio, Texas, located within Northside Independent School District (NISD), the defendant-appellant in this case.  NISD terminated their employment after determining that they had improperly implemented the federal Rehabilitation Act.  In response, Powers and Wernli sued NISD under, among other things, the Texas Whistleblower Act, claiming their termination constituted unlawful

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-50193

retaliation for their reports of NISD's alleged violations of the Rehabilitation Act. NISD moved for summary judgment, raising governmental immunity as a defense to the Whistleblower Act claims. The district court denied NISD's motion in relevant part, and NISD now appeals. For the reasons set forth below, we **AFFIRM IN PART** the district court's order denying NISD's motion for summary judgment, and **DISMISS IN PART** NISD's appeal for lack of jurisdiction.

## I.    Background

The Rehabilitation Act prohibits discrimination on the basis of disability in federal agencies and federally funded programs. *See* 29 U.S.C. § 794(a) (enacted originally through Pub. L. No. 93-122, Title V, § 504). Federally funded school districts fall within the ambit of section 504 of the Rehabilitation Act, and section 504's implementing regulations articulate requirements tailored to school districts. In particular, school districts are required to "conduct an evaluation . . . of any person who, because of handicap, needs or is believed to need special education or related services before taking any action with respect to the initial placement of the person in regular or special education and any subsequent significant change in placement." 34 C.F.R. § 104.35(a). That evaluation includes establishing standards and procedures that ensure "[t]ests are selected and administered so as best to ensure that, when a test is administered to a student with impaired sensory, manual, or speaking skills, the test results accurately reflect the student's aptitude or achievement level or whatever other factor the test purports to measure, rather than reflecting the student's impaired sensory, manual, or speaking skills (except where those skills are the factors that the test purports to measure)." *Id.* § 104.35(b)(3).

To comply with the section 504 requirements, NISD created a "504 committee" comprising educators tasked with conducting the required

evaluations of students.  Powers and Wernli were members of the 504 committee during the 2012–2013 school year.  That year, the 504 committee evaluated J.B., a student with attention deficit hyperactivity disorder.  The 504 committee determined that J.B. had a reading disability and was thus entitled to an accommodation during the 2013 STAAR test, which is a Texas standardized test.  Pursuant to the accommodation, a proctor would read the test questions aloud to J.B.  Shortly thereafter, NISD's 504 coordinator, Anna Draker, reviewed the 504 committee's recommendation and notified the 504 committee that J.B. was not entitled to the accommodation due to a lack of supporting documentation.   As a result, J.B. did not receive the accommodation.

After Draker's intervention in the J.B. matter, she audited NISD's 504 files during which she discovered that Wernli had marked as eligible various students who Draker believed were ineligible for section 504 accommodations.  Draker and other NISD personnel then informed Powers and Wernli that they believed these practices were illegal.  After those conversations, Powers and Wernli made several calls to the Texas Education Agency (TEA).  They testified in their depositions that they made these calls to report NISD's purportedly unlawful conduct in denying disabled students accommodations to which they were entitled.

Between July 24 and July 30, 2013, NISD suspended Powers and Wernli on the ground that they had illegally classified students as eligible for section 504 accommodations even though the students were ineligible.  In accordance with NISD's "DFBA (Local)" grievance policy, Powers and Wernli filed grievances, which were denied on December 3, 2013.  On December 10, 2013, the NISD Board of Trustees voted to terminate Powers's and Wernli's employment, and they were notified of the termination on December 17, 2013.  The December 17 notification letter explained that, pursuant to an attached

No. 16-50193

"DFBA (Legal)" policy, Powers and Wernli could initiate a hearing process to appeal the termination.  Powers and Wernli did so on December 30.  That process culminated in the Board's final vote to terminate Powers's and Wernli's employment on April 22, 2014.  Thirty days later, Powers and Wernli filed this suit, alleging in part that NISD terminated their employment in violation of the Texas Whistleblower Act.

NISD filed a motion for summary judgment, arguing, among other things, that Powers and Wernli failed to satisfy the Texas Whistleblower Act's provisions that waive NISD's governmental immunity.  The district court rejected those arguments and denied NISD's motion for summary judgment. NISD now appeals.

## II.    Analysis

### A. Jurisdiction and Standard of Review

Because governmental immunity under Texas law "is complete immunity from suit," this court has jurisdiction over NISD's interlocutory appeal from the district court's order denying governmental immunity. *Morgan v. Plano Indep. Sch. Dist.*, 724 F.3d 579, 582 (5th Cir. 2013).  "And because governmental immunity from suit defeats a trial court's jurisdiction, whether a trial court has jurisdiction is a question of law subject to de novo review." *Id.*

As relevant here, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

### B. Whistleblower Act Claims

The Texas Whistleblower Act provides:

A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by

4

No. 16-50193

the employing governmental entity or another public employee to an appropriate law enforcement authority.

Tex. Gov't Code § 554.002(a). When a public employee alleges a violation of the Act, the employing state or local governmental entity's immunity from suit is waived. *See id.* § 554.0035. NISD offers three arguments why Powers and Wernli failed to establish a waiver of NISD's governmental immunity under the Act. We reject each.

First, NISD claims that Powers and Wernli failed timely to file suit under the Act. The Act provides that

[a] public employee must initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action before suing under this chapter.

*Id.* § 554.006(a). If a final decision is not rendered within 60 days after the date the procedures are initiated, then the employee may elect to exhaust those applicable procedures, "in which event the employee must sue not later than the 30th day after the date those procedures are exhausted to obtain relief under this chapter[.]" *Id.* § 554.006(d)(1).

Powers and Wernli elected to exhaust NISD's grievance procedures, but NISD asserts that Powers and Wernli filed suit long after the 30-day deadline. NISD emphasizes that its DFBA (Local) policy "states clearly that 'Employees who allege adverse employment action in retaliation for reporting a violation of law to an appropriate authority shall initiate a grievance under this policy . . .' and that the Board will make a 'final decision' on the Whistleblower Complaint." NISD contends that the Board's final decision on December 3, 2013 to deny Powers's and Wernli's grievances triggered the 30-day period during which Powers and Wernli were required to file their lawsuit. Because they did not sue until May 22, 2014, NISD argues their suit was untimely, and NISD's governmental immunity has not been waived.

5

No. 16-50193

Powers and Wernli, however, respond that their suit followed exhaustion of the grievance procedure for challenging their December 2013 terminations and was timely every step of the way.  They point to the December 17, 2013, notification letter explaining their termination, which advised them that they could "request that a hearing be held concerning the proposed termination of [their] term contract . . . as set forth in the enclosed policies."  The attached DFBA (Legal) policy was headed "Northside ISD-Bexar County" and  stated that "[i]f a term contract employee desires a hearing before an independent hearing examiner, the employee must file a written request with the Commissioner not later than the 15th day after the date the employee receives notice of the proposed termination or suspension without pay."  Powers and Wernli initiated that hearing procedure on December 30, 2013, within the 15-day window, and it was not resolved until April 22, 2014, when the Board of Trustees terminated them.  With April 22 as the critical date that triggered the 30-day filing period for a Whistleblower Act suit, the suit was timely.

NISD's reply brief ignores the DFBA (Legal) document and offers no reason why compliance with NISD's DFBA (Legal) policy is not dispositive. *See id.* § 554.006(d)(1) (providing suit must be filed within 30 days "after the date [the DFBA (Legal)] procedures [were] exhausted"). The district court did not err in holding the Whistleblower Act suit timely filed.

NISD next contends that Powers and Wernli failed to establish a waiver of NISD's governmental immunity because they did not report in good faith a violation of law to "an appropriate law enforcement authority," as required by the Whistleblower Act. *Id.* § 554.002(a).  NISD's only argument on this point, however, is that they could not have believed in good faith TEA was such an authority, because "each time that [they] spoke to someone at TEA, they were referred to the information available on the TEA website, told that they should 'be okay' regarding the allegations against [them], and informed that TEA did

not get involved with the situation that [they] were calling about." As the district court pointed out, NISD mischaracterizes Powers's and Wernli's deposition testimony because these references occurred with respect to Powers's and Wernli's requests for legal guidance, not TEA's general responsibility for section 504 issues. Despite the district court's rebuke of NISD's mischaracterization, NISD repeats its error on appeal without further argument. Presented with no other argument why TEA is not an appropriate law enforcement authority,[1] we agree with the district court's denial of summary judgment on this issue.

Finally, in a similar vein, NISD argues that Powers and Wernli lacked a good faith belief that they were reporting a violation of law. *See id.* § 554.002(a) (protecting "a public employee who in good faith reports a violation of law"). NISD claims that "[i]t is clear from Plaintiffs' own testimony that they were not reporting an actual violation of law; they were seeking validation of their prior actions for the purpose of protecting their jobs, in light of the serious allegations they were facing." Powers and Wernli respond that their testimony reflects that they reported section 504 violations. The district court rejected NISD's argument, noting that "[a] jury, not the Court, is best equipped to make the credibility determinations resolution of that argument requires." Given the district court's conclusion that NISD's argument creates a genuine dispute of material fact, we lack jurisdiction to resolve that argument. *See, e.g., Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 408–09 (5th Cir. 2009) (citing cases and noting in the qualified-immunity context that if the

---

[1] We note that NISD's reply brief contains new arguments on the "appropriate law enforcement authority" and "good faith" issues that NISD did not raise in either its motion for summary judgment or its opening brief in this court. Because "arguments raised for the first time in a reply brief . . . are waived," and because no extraordinary circumstances compelling an exception to that rule exist, we do not address these new arguments. *E.g., United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005).

No. 16-50193

immunity determination "would require the resolution of a genuinely disputed fact, then that fact is material and we lack jurisdiction over the appeal").

\*    \*    \*

For these reasons, we **AFFIRM IN PART** the district court's order denying NISD's motion for summary judgment, and **DISMISS IN PART** NISD's appeal for lack of jurisdiction.